STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CV-05-87

FILED
COURT
OCT 05 2006
PENOBSCOT COUNTY

ENTERPRISE RENT A CAR OF )
BOSTON, INC., )
        Plaintiff, )
         )
         )
         )
    v. )
         )
         )
DOWNEAST TOYOTA, )
        Defendant. )

**DECISION AND JUDGMENT**

DONALD L. GARBRECHT
LAW LIBRARY

OCT 16 2006

      This matter came on for trial on the Complaint of Plaintiff Enterprise Rent A Car of Boston, Inc. (herein, "Enterprise") and the Counterclaim of Defendant Downeast Toyota (herein, "Downeast Toyota") on October 4, 2006. All parties were present and represented by counsel.

      The evidence demonstrates that the parties entered into a business relationship, apparently without much written documentation, whereby Enterprise would operate a rental car facility out of Downeast Toyota's automobile dealership property in Brewer. The primary customer base for Enterprise would be customers of Downeast Toyota who were having warranty or auto body work performed upon their vehicles. Monthly invoices for rental charges would be forwarded to Downeast Toyota and Downeast Toyota paid them on a prompt and consistent basis.

      Enterprise has established by a fair preponderance of the evidence that Downeast Toyota is currently indebted to it in the amount of $11,500 for car rentals. Downeast Toyota does not contest such, but asserts, by way of counterclaim and affirmative defense, that Enterprise is indebted to it in the same amount for rental charges for office facilities.[1]

      Downeast Toyota provided office space within the Brewer property to Enterprise at the monthly rental rate of $250. Enterprise also had the use of a number of parking spaces for its rental vehicles. Enterprise remitted the $250 rent on a monthly basis. No invoice or bill was created by Downeast Toyota for this purpose.

      This symbiotic relationship continued from 2000 through 2004. In early January, 2005, Enterprises' local manager, Glen McCrumb, was in the process of leaving his position due to a promotion. He wanted the folks at Downeast Toyota to meet his successor, Faouzi Tlili, and arranged a meeting in conjunction with a regular managers

---

[1] Downeast Toyota knowingly deducted this specific amount from regular remittances on the automobile rental invoices remitted by Enterprise.

meeting at Downeast Toyota on January 6, 2005. The parties' recollections of the discussions at the meeting vary considerably.

Edward Darling, the owner of Downeast Toyota reports that he advised McCrumb (and possibly Tlili) that the rent for the Enterprise operation would increase to $2500 effective immediately. McCrumb adamantly denies being advised of such and testified that he would have been greatly alarmed at such a dramatic increase in the rent and would not have simply ignored such statements. Kevin Kelly's letter of May 25, 2004 (Plaintiff's Exhibit A), which attempts to "recap" the January 6, 2005, states, "...Although no numbers were discussed...".

During the early part of 2005, no meaningful communication seems to have been exchanged between the parties. Downeast Toyota asserts that it forwarded rental invoices in the amount of $2500 for the months of January, February, March, and April although it cannot produce copies of such.[2] Enterprise denies receiving such invoices, again citing the fact that such invoices would have been so alarming that they would not have been ignored. In any event, it appears that the rent increase was finally being discussed in a meaningful way by late April. An exchange of letters and telephone calls culminated in a letter from Downeast Toyota to Enterprise inviting them to accept the $2500 rental figure or to vacate the premises by June 7, 2005. Enterprise vacated the premises within a week thereafter.

The court finds all witnesses to be credible. Each presented an earnest and responsible demeanor. The court finds no particular bit of evidence to be dispositive upon the issues raised by the Counterclaim and Affirmative Defenses.

This circumstance demonstrates the difficulties raised when parties engage in informal business relationships. While "handshake deals" are commendable for the trust and good will that they engender, when disputes arise – as they inevitably will – the lack of an unambiguous, written contract creates uncertainty (and litigation). If the parties had a written contract, signed by both, which defined their rights and responsibilities, this lawsuit would be unnecessary.

This matter is governed by principles of contract law. The law does not require this relationship to be reduced to a formal written contract to be enforceable. The court concludes that the parties had two unwritten contracts: first, an arrangement for customers of Downeast Toyota to obtain rental cars through the auspices of Enterprise (and billing would be routed through Downeast Toyota and secondly, a rental agreement whereby Enterprise could occupy space at the Downeast Toyota facility for $250/ month.

Both parties agree that the forgoing contracts existed. Each was terminable at will (although the tenancy at will requires a thirty day notice for eviction or rental change).

---

[2] Apparently the invoices were generated on a word processor and subsequent invoices were simply modification of earlier ones (thereby overwriting the earlier ones). No hardcopy versions were retained. Further, Downeast Toyota asserts that various invoices were directed to different locations including Bangor, Portland, and Londonderry, New Hampshire.

An agreement to modify the rental rate need not be in writing, although it would have removed the uncertainty which the parties are experiencing here. Downeast Toyota is unable to demonstrate that any agent of Enterprise ever expressly entered into a contract to bind his corporation to the increased rent.[3] Downeast Toyota argues that its $2500 invoices which started in January constitute notice of the increase in rent and that Enterprise's continuing occupation of the premises constitute an acquiescence to the new terms (or create an circumstance where Enterprise is unjustly enriched by its continuing occupation).

As noted above, the court finds all witnesses to be credible – the court finds their testimony to be in good faith. As such, the weight of the evidence on the creation of a modified contract is a dead—even tie. The court does not find one side to be more convincing than the other.

Accordingly, as Downeast Toyota bears the burden of proof on its Counterclaim and Affirmative Defenses, and it has not established its contentions by a preponderance of the evidence, judgment must be entered on behalf of Enterprise on these points.[4] The Clerk may enter Judgment on behalf of Enterprise on the Complaint in the amount of $11,500 plus interest and costs, and in favor of Enterprise on the Counterclaim.

So Ordered

The Clerk may incorporate this Order upon the docket by reference.

Dated: October 5, 2006

Andrew M. Mead
JUSTICE, MAINE SUPERIOR COURT

---

[3] Downeast Toyota bears the burden of proving, by a preponderance of the evidence, that a "meeting of the minds" occurred (i.e. – that Enterprise expressly and unequivocally accepted or rejected the terms of any rent increase).

[4] The court finds that Downeast Toyota has not demonstrated unjust enrichment as the evidence does not include evidence of the fair market value of the rented premises.

ENTERPRISE RENT A CAR OF BOSTON INC VS DOWNEAST TOYOTA
UTN:AOCSsr  -2005-0045474                    CASE #:BANSC-CV-2005-00087
--------------------------------------------------------------------------
ENTERPRISE RENT A CAR OF BOSTON INC                          PL
ATTY JOYCE, SEAN P.   Tel# (207) 781-5750
ATTY ADDR:75 PEARL ST., SUITE 204 PO PORTLAND ME 04112-0048

DOWNEAST TOYOTA                                              DEF
ATTY KLEIN, PETER  Tel# (207) 947-0111
ATTY ADDR:80 EXCHANGE ST PO BOX 1210 BANGOR ME 04402-1210




M=More, Space = Exit:M

Select the EXIT KEY for page selection line.